UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 06-80210-WRS
                                                         Chapter 13
TORIANO J. AVERY,

    Debtor

TORIANO J. AVERY,

    Plaintiff                              Adv. Pro. No. 07-8062-WRS

  v.

WELLS FARGO BANK NA d/b/a
WELLS FARGO HOME MORTGAGE
INC., WASHINGTON MUTUAL BANK
NA,

    Defendants

## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the motion for summary judgment filed by Defendant Wells Fargo Bank, N.A. The motion is fully briefed. (Docs. 37, 38, 47, 48, 49). For the reasons set forth below, the Court finds that there are no material facts in dispute and that Defendant Wells Fargo is entitled to judgment as a matter of law. For this reason, the Plaintiff's complaint is DISMISSED WITH PREJUDICE.

## I. FACTS

Plaintiff Toriano J. Avery filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on April 7, 2006. (Case No. 06-80210, Doc. 1). Avery owns a residence

which is subject to a mortgage held by Defendant Wells Fargo Bank.[1] The mortgage was in arrears in the approximate amount of $7,800 as of the date of the petition. Chapter 13 of the Bankruptcy Code permits a debtor to cure a mortgage delinquency over time while maintaining current payments on the mortgage. See, 11 U.S.C. § 1322(b)(5).[2] In this District, the Court generally requires that debtors make current monthly mortgage payments (maintenance payments) directly to the holder of the mortgage. The delinquency, or arrearage is disbursed by the Chapter 13 Trustee, to the holder of the mortgage, out of payments made by the debtor pursuant to his Chapter 13 Plan.

If all goes as planned, the holder of the mortgage will be made whole. Regular monthly payments are to be made by the debtor to the mortgage holder while the arrearage is satisfied by payments made by the Chapter 13 Trustee. Unfortunately, not all went as planned in this case. The Bank filed two separate motions for relief from the automatic stay, alleging that Plaintiff Avery had fallen behind on his maintenance mortgage payments. In both instances, the parties entered into agreed "Hoggle" orders.[3] Under a Hoggle Order, or Hoggle Amendment (as the

---

[1] The mortgage was held by Washington Mutual Bank as of the date of the petition in bankruptcy. The mortgage was subsequently assigned to Wells Fargo Bank. For clarity sake the Court will simply refer to Wells Fargo Bank or simply Bank rather than distinguish between Washington Mutual and Wells Fargo.

[2] In those cases where the debtor has a mortgage delinquency, he is obligated to make two kinds of payments to the holder of the mortgage. The regular monthly payment is the "maintenance" payment and the payments which bring the mortgage current are the "cure."

[3] In 1994, the Eleventh Circuit handed down the case of In re Hoggle, 12 F.3d 1008, wherein it was held that post-petition arrears could be cured under a Chapter 13 Plan. Prior to that time, some courts had held that delinquencies accruing after the date of the petition could not, under any circumstances, be paid under a Chapter 13 Plan. It should be noted that Bankruptcy Courts are not required to permit such amendments to the Plan, but rather provided discretion to do so on a case by case basis.

-2-

Case 07-08062   Doc 50   Filed 01/27/09   Entered 01/27/09 15:14:28   Desc Main
                         Document      Page 2 of 7

Chapter 13 Plan is amended to provide for additional arrearages), the Debtor is not required to catch up the recently accrued delinquency, rather he simply goes forward making his regular monthly payments. As the Debtor now must pay a greater amount, over a shorter period of time, the Chapter 13 Plan payment must usually be increased. Thus, a Hoggle Order usually fixes the amount of the arrearage and provides for an increase in payments to the Chapter 13 Trustee.[4] Two such orders were entered in Avery's bankruptcy case. (Case No. 06-80210, Docs. 32, 45).

The Agreed Hoggle Orders contain another feature of note, in that they both contain "future default" provisions. That is, in the event the Debtor defaults in the future, and fails to cure within 30 days, the automatic stay terminates without further notice or hearing. These provisions are called by several names, most of which have no basis in the Bankruptcy Code. However, Bankruptcy Courts are given discretion to "condition" the continued existence of the automatic stay. 11 U.S.C. § 362(d). Such conditional orders are commonly called, in this District, "drop dead orders." In the event the Debtor defaults and fails to timely cure, the automatic stay terminates by operation of the order. Plaintiff refers to such provisions as "time bombs" in his complaint. While the Court does not wish to unduly quibble as to matters of nonstandard terminology, neither of the terms "time bomb" or "drop dead" are contained in the Bankruptcy Code. However, the term "drop dead" is commonly used here while "time bomb" is not.

---

[4] The first Hoggle Order fixed the arrearage at $9,983.59, and increased the Debtor's monthly plan payment to $555.00. (Case No. 06-80210, Doc. 32). The second Hoggle Order increased the arrearage to $12,548.79, and increased the Chapter 13 Plan payments to $646.00 per month. (Case No. 06-80210, Doc. 45).

Notwithstanding the fact that the Bank had twice agreed to "Hoggle" post-petition delinquencies into the Plan, Avery continued to default on his monthly mortgage payments. The facts are set forth in excruciating detail in Wells Fargo's Brief. (Doc. 38, pp. 1-11). Avery has not submitted any evidence which contracts the assertions of Wells Fargo in its brief. (Docs. 47, 48).

Avery makes much in his brief over the fact that representations as to the amount of delinquency in several Notices of Acceleration were incorrect. However, these inaccuracies were due to the fact that a check tendered by Avery was credited to his account. When the check was subsequently dishonored, the delinquency necessarily increased by the amount of the nonsufficient funds (nsf) check, plus any fee for the nsf check. Thus, the error in the Notice of Acceleration, if such can properly be called an error, was brought about by Avery and not an accounting error made by the Bank.

Avery alleges in his complaint, that the acceleration of his mortgage was brought about by the Bank's misapplication of payments and charging excessive fees, yet there is no evidence in the Court's record to show that this is so. For example, in some cases a borrower will make his regular monthly "maintenance" payments directly to the mortgage holder as called for by his Chapter 13 Plan. Instead of applying these payments as called for by the Plan, some mortgage holders have improperly applied these payments to the oldest unsatisfied payment and report the current payment as delinquent, improperly charging fees and improperly reporting the mortgage as in default. Such conduct would violate the provisions of 11 U.S.C. § 524(i). However, there is no evidence in the case at bar to show that this has happened here.

To summarize, Avery filed a petition in Bankruptcy pursuant to Chapter 13. In his Chapter 13 Plan, Avery acknowledged a prepetition mortgage delinquency which he proposed to cure over a period of time through his Chapter 13 Plan. Avery again defaulted, even after the filing of the petition, and the Bank twice agreed to "Hoggle" post-petition delinquencies into the Chapter 13 Plan. After the second Hoggle order was entered, Avery continued to fail to pay his mortgage and indeed has not made a regular monthly mortgage payment in over one year.

## II. LAW

### A. Procedural Setting

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (G), (K) and (L). For this reason, this Court may enter a final decision.

This Adversary Proceeding is before the Court on the Bank's motion for summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed . R. Civ. P., 56(c) made applicable to Adversary Proceedings pursuant to Fed. R. Bank. P. 7056. "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000). The court does not "weigh the evidence to determine the truth of the matter, but solely determines whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

### B. Introduction

The Plaintiff casts his complaint in ten counts, many of which overlap. In essence, he alleges that the Bank has improperly applied post-petition mortgage maintenance payments to the prepetition delinquency thereby manufacturing a default and improperly accruing penalties. The Plaintiff seeks declaratory and injunctive relief as well as actual and punitive damages. The Court will divide its discussion of the merits of the Plaintiffs claims in two parts. First, it will discuss the question of whether there is a default, manufactured or otherwise, of the mortgage. Second, it will discuss the imposition of fees by the Bank.

### C. The Postpetition Mortgage Defaults

Chapter 13 permits debtors to cure mortgage delinquencies. 11 U.S.C. §1322(b)(5). The intention of the Plaintiff's original plan was to keep his residence, make his current mortgage payments to the Bank and cure the delinquency over a period of time. The evidence is clear in this case that the Plaintiff repeatedly defaulted on his mortgage, either by not making payments or by tendering checks which were dishonored. The Plaintiff alleges that he has been harmed by the Bank's actions, arguing any number of legal theories, but the simple facts are that the mortgage payments were not made. As a result, the automatic stay terminated pursuant to the future default clause in the agreed orders. Accordingly, the Bank is free to begin foreclosure proceedings.

### D. The Imposition of Fees

The Plaintiff alleges that fees have been improperly imposed as a result of a default manufactured by the Bank, resulting from the improper application of current mortgage payments to the prepetition delinquency. There is no evidence to support this allegation. Indeed, the Plaintiff does not identify even one charge that was made improperly. Having carefully reviewed the materials submitted by the parties, the Court concludes that the Plaintiff has not shown that any charges or fees were improperly made to the Plaintiff's account.

### III. CONCLUSION

Having carefully reviewed the record, the Court finds that there are no material facts in dispute. In addition, Defendant Wells Fargo Bank is entitled to judgment as a matter of law. The Plaintiff's claim that his mortgage default is the result of the improper application of payments to his account, or the improper imposition of fees is unsupported by the factual record. Therefore, the motion for summary judgment filed by the Bank is GRANTED and the Plaintiff's Complaint is DISMISSED WITH PREJUDICE. The Court will enter a separate order in accordance with Rule 9021, Fed. R. Bankr. P.

Done this 27th day of January, 2009.

/s/ William R. Sawyer  
United States Bankruptcy Judge

c: Nicholas H. Wooten, Attorney for Plaintiff  
   Stephen B. Porterfield, Attorney for Defendant